Eliza Bouthillier
vs. } Eq. No. 8386.
Frank Cloutier

May 12, 1930.

TANNER, J. This is a bill in equity brought to cancel a deed given by the respondent to the complainant. The deed sold to the complainant all of lot 90 on the Wanskuck Plat except a small triangular piece which had been taken off the rear of the lot by the right of way of the Southern New England Railway Company. There was a two-family dwelling house on the front of said lot 90. Just east of said lot 90 was a triangular piece of land which was all that was left of lot 91 just east of said lot 90 after said right of way of said Southern New England Railway Company was laid out.

The complainant says that when she bought the land the respondent told her that the yard of the lot sold was V-shaped; that there was enough land to build another house, and it was V-shaped in the back of the lot, and that he pointed out a post which was on said triangular portion of said lot 91, said post being marked H on the plat put into the case as an exhibit; that he said that the line ran from said post to the rear line of the lot, which said rear line was 27 or 28 feet long, and that the lot was V-shaped.

The respondent says that when he sold her the lot he did not tell her how much land she was getting. His son, Arthur Cloutier, was present at the time and testifies that his father merely told the complainant that it was a full-size lot.

The complainant introduced the testimony of several members of her family and also of one Butterworth, who had lived in her house, and all testified that the respondent said that the line running from the post marked H in the exhibit marked the beginning of the easterly line of said lot and that the post which the complainant had set out on a line running from said post marked H to the rear of the lot was the correct line.

Of course, the real question at issue is what the respondent told the complainant before she bought the lot, and not what he told her or anybody else afterwards, so that most of the testimony introduced by the complainant can be used simply to corroborate her statement of what was told to her when she bought the lot.

It appears in testimony that when the respondent sold the lot to the complainant, he gave her his deed from the Southern New England Railway Company and also the sketch marked Complainant's Exhibit 2, which was given him by the agent of the Southern New England Railway Company when he bought the lot. This sketch shows that the land which is described in the deed given by the respondent to the complainant was outlined in red. It would seem as though the shape of this lot as outlined in red might have apprized the complainant that she wasn't buying any such shape lot as she now claims.

We are at a loss to understand why the respondent should have made the representation as to the size and shape of the lot which is attributed to him. The testimony of Garner & Douray, who sold the lot to him, shows that he was told that he was not buying any portion of lot 91. It does not appear that there was any necessity for his making such representation as to

the size of the lot. The complainant had lived in the house for some time and appears to have paid only a very reasonable sum for the lot and building. The depth of the lot as sold was 114 feet and the complainant probably could have built another house in the rear of the lot as sold, if she had desired to do so.

At any rate, when we consider the rule of law that to set aside a properly executed deed the Court must have been able to find very clearly that misrepresentations were made which would justify such action, we do not find ourselves able to say that the evidence is so clear that we are justified in setting the deed aside.

We have wondered—as we do in many cases—how there could be such conflict of testimony. In this particular case we have queried whether or not the respondent may have said what was told him by the agent of the company when he bought the lot, to wit: that he might use the remaining part of said lot 91 east of said lot 90 as long as the company didn't require it. When we consider the great length of time during which the Southern New England Railway has been unable to complete and use this right of way and the apparently poor prospects of the company's doing so, it seems as though the complainant might continue to use said strip of land indefinitely. However, this may be, we feel ourselves unable to say that we are so fully convinced of the misrepresentations claimed by the complainant that we are willing to decree a cancellation of the deed.

The bill must therefore be dismissed.

For complainant: Curran, Hart, Gainer & Carr.

For respondent: Arthur Cushing and Thomas L. Marcaccio.